United States Court of Appeals,

Eleventh Circuit.

No. 94-9216.

Matter of MUNFORD, INC., d.b.a. Majik Market, Debtor.

Danné Brokaw MUNFORD, as Executrix of the Estate of Dillard Munford;  Russell C. Fellows;  Winton M. Blount;  Herbert J. Dickson;  James L. Ferguson;  Robert M. Gardiner;  Richard K. Leblond, II;  Andrall E. Pearson;  S.B. Rymer, Jr., Plaintiffs-Appellants,

James M. Carroll;  Joseph W. Hardin;  Jay Rubel;  Shearson Lehman Brothers, Inc.;  DFA Investment Dimensions Group, Inc.;  State Street Bank & Trust Company;  PNC Bank, National Association, Plaintiffs,

Shearson Lehman Brothers, Inc., Plaintiff,

v.

VALUATION RESEARCH CORPORATION, Defendant,

Munford, Inc., Defendant-Appellee.

Oct. 10, 1996.

Appeal from the United States District Court for the Northern District of Georgia.  (No. 1:94-00348-CV-GET), G. Ernest Tidwell, Chief Judge.

Before HATCHETT, Chief Judge, CLARK, Senior Circuit Judge, and MILLS[*], District Judge.

HATCHETT, Chief Judge:

In this corporate leveraged-buy-out merger case, we affirm the district court's ruling that Georgia's stock distribution and repurchase statutes apply.

FACTS

In May 1988, the Panfida Group offered to purchase Munford, Inc., a public company on the New York Stock Exchange, through a

[*]Honorable Richard H. Mills, U.S. District Judge for the Central District of Illinois, sitting by designation.

leverage buy out (LBO) structured as a reverse triangle merger for $18 per share. Under the terms of the proposed merger agreement, the Panfida Group agreed to create Alabama Acquisition Corporation (AAC) and a subsidiary, Alabama Merger Corporation (AMC), and through AAC or AMC deposit the funds necessary to purchase Munford, Inc.'s outstanding stock with Citizens & Southern Trust Company. As evidence of its commitment to purchase Munford, Inc., the Panfida Group bought 291,100 of Munford, Inc.'s stock. In June 1988, the Panfida Group also told Munford, Inc.'s board of directors that it, upon the sale of Munford, Inc., intended to put additional capital into Munford, Inc. but would only invest as much as Citibank required to finance the proposed merger.

After consulting its lawyers and financial experts at Shearson Lehman Brothers (Shearson), the board of directors accepted the Panfida Group's offer pending shareholder approval of the purchase agreement. Prior to the directors seeking shareholder approval, the Panfida Group learned that Munford, Inc. had potential environmental liability. Consequently, the Panfida Group reduced the purchase price from $18.50 a share to $17 a share. On October 18, 1988, the shareholders approved the merger plan. On November 29, 1988, the sale of Munford, Inc. to the Panfida Group closed. Pursuant to the purchase agreement, the LBO transaction converted each share of common stock into the right to receive the merger price of $17 per share and extinguished the shareholders' ownership in Munford, Inc. On January 2, 1990, thirteen months after the merger, Munford, Inc. filed for Chapter 11 proceedings in bankruptcy court.

## PROCEDURAL HISTORY

On June 17, 1991, Munford, Inc. brought an adversary proceeding in bankruptcy court in the Northern District of Georgia on behalf of itself and unsecured creditors pursuant to 11 U.S.C. §§ 544(b) and 1107(a) (1988), seeking to avoid transfers of property, disallow claims and recover damages against former shareholders, officers, directors, and Shearson. In Count III of its complaint, Munford, Inc. asserted that the directors violated legal restrictions under Georgia's distribution and share repurchase statutes in approving the LBO merger. Specifically, Munford, Inc. asserts that the LBO transaction constituted a distribution of corporate assets that rendered Munford, Inc. insolvent. The directors moved for summary judgment contending that the Georgia distribution and repurchase statutes did not apply to LBO mergers. On August 10, 1994, the district court, adopting the bankruptcy court's report and recommendation in part, denied the directors' motion for summary judgment on Munford, Inc.'s stock repurchase and distribution claim, ruling that Georgia's stock distributions and repurchase restrictions applied to LBO transactions. The district court also found that a genuine issue of material fact existed as to whether the LBO merger rendered Munford, Inc. insolvent in violation of Georgia law. On August 26, 1994, the district court amended its order and entered final judgment pursuant to Federal Rules of Civil Procedure 54(b) to permit this appeal. Fed.R.Civ.P. 54(b).

## CONTENTIONS

The directors contend that the district court erred in

concluding that the LBO merger constituted a distribution of assets within the meaning of Georgia's distribution and repurchase statutes. They contend that these statutes do not apply to an arm's-length sale of a company to a third party through an LBO merger. In the alternative, the directors contend that they should not face personal liability for alleged violations of Georgia's distribution and repurchase statutes because they approved the LBO merger in good faith with the advice of legal counsel.

Munford, Inc. contends that the district court properly denied the directors' motion for summary judgment on this claim.

## ISSUE

The sole issue on appeal is whether the district court erred in ruling that Georgia's stock distribution and repurchase statutes apply to a leverage acquisition of a corporation.

## DISCUSSION

We review the denial of summary judgment *de novo* applying the same legal standard that controlled the district court in rendering its decision. *Brown v. Crawford,* 906 F.2d 667, 669 (11th Cir.1990), *cert. denied,* 500 U.S. 933, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991).

Georgia's capital surplus distribution statute provides, in pertinent part:

> (a) The board of directors of a corporation may from time to time distribute to shareholders out of capital surplus of the corporation a portion of its assets in cash or property subject to the following [provision]:

> (1) No such distribution shall be made at a time when the corporation is insolvent or when such distribution would render the corporation insolvent[.]

O.C.G.A. § 14-2-91 (1988). Similarly, Georgia's stock repurchasing

statute prohibits directors of a corporation from repurchasing the corporation's shares when such purchase would render the corporation insolvent. O.C.G.A. § 14-2-92(e) (1982).[1] Under both statutes, directors who vote for or assent to a corporate distribution or stock repurchase in violation of these statutes are jointly and severally liable for the amount distributed or paid to the extent the payments violated the restrictions. O.C.G.A. § 14-2-154(a)(1), (2) (1982).

The directors appeal the district court's denial of summary judgment contending that Georgia's distribution and share repurchase statutes do not apply to LBO mergers. The directors argue that Georgia's distribution and repurchase statutes only apply in circumstances where the directors take assets of the corporation and either distribute them to shareholders or use them to repurchase shares. In both cases, the directors assert, control of the company does not change hands and the directors determine the source of the assets used. The directors note that in this case the Panfida Group owned Munford, Inc. at the completion of the LBO merger and thereafter ran the company. The directors therefore argue that only Georgia's merger statutes apply to this transaction.

The district court denied the directors' motion for summary judgment adopting the reasoning of the bankruptcy court. The bankruptcy court, in analyzing the LBO merger, considered the substance of the transaction and equated the LBO merger to a stock

---

[1]On July 1, 1989, O.C.G.A. § 14-2-640 superseded O.C.G.A. §§ 14-2-91 and 14-2-92(e).

distribution or repurchase, disregarding the fact that Munford, Inc. had new owners and stockholders as a result of the merger at the time the shareholders received the LBO payments. The bankruptcy court specifically found that: (1) the directors "approved or assented to the underlying [m]erger [a]greement which structured and required payment to the shareholders"; (2) the merger agreement contemplated the Panfida Group's pledging of "virtually all of Munford[, Inc.]'s assets as collateral" for the loan that funded the LBO payments made to the shareholders; and (3) the directors knew or should have known "the source, purpose, or use of" Munford, Inc.'s assets prior to or at the time the directors approved the merger plan. Based on these findings, the bankruptcy court concluded that a reasonable jury could conclude that the merger rendered Munford, Inc. insolvent in violation of Georgia's distribution and stock repurchase statutes.

In reaching its conclusion, the bankruptcy court rejected a Fourth Circuit case that refused to apply Virginia's corporate distribution statute to recapture payments made to shareholders pursuant to an LBO merger. *See C-T of Virginia, Inc. v. Barrett,* 958 F.2d 606 (4th Cir.1992).

In *C-T of Virginia,* the Fourth Circuit held that the LBO merger did not constitute a distribution within the meaning of Virginia's share repurchase and distribution statutes reasoning that Virginia's distribution statute

> [was] not intended to obstruct an arm's-length acquisition of an enterprise by new owners who have their own plans for commercial success. The reason for this distinction is simple: a corporate acquisition, structured as a merger, is simply a different animal from a distribution.

*C-T of Virginia,* 958 F.2d at 611. The court in *C-T of Virginia* further reasoned that because such distribution statutes derive from the regulation of corporate dividends courts should limit their restriction to situations in which shareholders after receiving the transfer from the corporation retain their status as owners of the corporation.

The bankruptcy court, in this case, rejected this line of reasoning, reasoning that the legislature enacted the distribution and share repurchase statutes of the Georgia Code to protect creditors "by prohibiting transfers at a time when a corporation is insolvent or would be rendered insolvent." Such intent, the bankruptcy court noted, "furthers the longstanding principle that creditors are to be paid before shareholders." We agree with the district court and the reasoning of the bankruptcy court and decline to join the Fourth Circuit in holding that "[a] corporate acquisition, structured as a merger, is simply a different animal from a distribution." *C-T of Virginia, Inc.,* 958 F.2d at 611.

We note that the LBO transaction in this case did not merge two separate operating companies into one combined entity. Instead, the LBO transaction represented a "paper merger' of Munford, Inc. and AMC, a shell corporation with very little assets of its own. To hold that Georgia's distribution and repurchase statutes did not apply to LBO mergers such as this, while nothing in these statutes precludes such a result, would frustrate the restrictions imposed upon directors who authorize a corporation to distribute its assets or to repurchase shares from stockholders when such transactions would render the corporation insolvent. We

therefore affirm the district court's ruling that Georgia's restrictions on distribution and stock repurchase apply to LBO.

In the alternative, the directors argue that their approval of the LBO merger should not subject them to liability under the distribution and repurchase statutes because they approved the merger in good faith and with the advice of legal counsel. Because we are not aware of any Georgia courts that recognize good faith or reasonable reliance on legal counsel's advice as an affirmative defense to liability under Georgia's distribution and repurchase statutes, we reject this argument.

## CONCLUSION

For the reasons stated above, we affirm the district court's denial of the directors' motion for summary judgment on Munford, Inc.'s stock distribution and repurchase claim.

AFFIRMED.